**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 30, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1045**

**STATE OF WISCONSIN**

Cir. Ct. No. 2025SC117

**IN COURT OF APPEALS**
**DISTRICT IV**

FIRST COMMUNITY CREDIT UNION,

    PLAINTIFF-RESPONDENT,

  V.

NATHANIEL SMITH,

    DEFENDANT,

ASHLEY SMITH,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed.*

¶1    KLOPPENBURG, J.[1]  Ashley Smith, pro se, appeals a judgment for replevin in favor of First Community Credit Union (First Community), which the circuit court granted after a court trial.  First Community has filed a motion for costs, fees, and attorney fees for what it asserts is a frivolous appeal.  I affirm the circuit court judgment and deny the motion.

## BACKGROUND

¶2    On January 9, 2025, First Community filed a small claims summons and complaint against Ashley and Nathaniel Smith.[2]  The complaint alleged that the Smiths defaulted on a note for which a 2018 Chevrolet Traverse ("the Traverse" or "the vehicle") is collateral by failing to make payments in November and December 2024, and that the balance due under the loan is $28,931.91 plus interest and costs.  First Community demanded judgment against the Smiths "for recovery of possession" of the Traverse, plus costs and disbursements.  Attached to the complaint were credit applications, a retail installment sales contract, a right to cure notice, and an account statement.  On January 16, First Community filed a confidential disclosure of protected information, attaching redacted copies of the documents attached to the complaint, as well as a motor vehicle purchase contract and a certificate of title.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24), and was assigned to me in June 2026.  All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading, this opinion will refer to Ashley Smith, the appellant, as "Smith"; to Nathaniel Smith, who did not file a notice of appeal, as "Nathaniel"; and to Smith and Nathaniel collectively as "the Smiths."

¶3      In April 2025, the case went to trial before the circuit court.  Smith appeared pro se on her own behalf, Nathaniel did not appear, and Brett Watring and Jack Gill appeared pro se on behalf of First Community.

¶4      Watring, an agent in the collection department at First Community, testified as follows.  The Smiths signed for a loan via a retail installment sales contract with the Frank Boucher car dealership.  Frank Boucher assigned the retail installment sales contract to First Community.  First Community "gave [Frank Boucher] the money," and the Smiths "got the vehicle," which is a 2018 Chevrolet Traverse.  The last payment that First Community received on the loan was made in August 2024, and a balance of $28,931.91 remains.  This information is detailed in the documents included in the exhibit presented by First Community at trial.

¶5      Smith testified as follows.  "[T]here is a finance contract here which was securitized, and there were funds made available on [her] personal security, and those funds were then deposited into an account for [her] at First Community."  She is "supposed to be able to use those funds and transfer them back to First Community each month to pay the debt that [she] owe[s] them."  The finance contract and the "security report from the third party" were not made available to her and should be made available to her pursuant to federal regulations.

¶6      Smith further testified that she and Nathaniel executed the credit application included in the exhibit presented by First Community.  This application was for Frank Boucher to "apply for credit in [the Smiths'] name and acquire financing for [the Smiths]" to purchase a vehicle.  The loan was assigned to First Community, she owed the money financed by the loan to First Community, and she was making the monthly payments to First Community to

repay the loan so that she could "have [the] car." The account statement included in the exhibit presented by First Community shows payments that the Smiths made to First Community from an account at a different financial institution.

¶7　　Smith introduced an exhibit showing her "statement of accounts" at First Community. She testified that the "loan account" on that statement "is designated to make the payment for the Traverse," and that while there is a debt associated with the loan, "it's still an account" which "has deposits put into it" and can have "withdrawals and deposits in it just like any other account." The loan account has a positive balance in her name with money provided by First Community because she "signed the finance contract allowing them to obtain those funds for us." She initially made payments to First Community because she had the "same misconception that most people have that this is simply an evidence of debt," but "after going through the UCC and seeing the way that an account is set up" she realized she has the "right to use the proceeds that are in that account."

¶8　　Smith further testified that the "finance contract," which was not provided to the circuit court by First Community or Smith, would represent a signed agreement between the Smiths and First Community and name First Community as a party, and would include credit terms, the amount financed, the payment schedule, the annual percentage rate, loan disclosures, and truth-in-lending disclosures.

¶9　　Smith testified that, when she left the Frank Boucher dealership, she agreed to pay $26,210 for the Traverse and to financing terms of 7.19% interest, for a total payment of $43,407.78; and that Frank Boucher's interest in the retail installment sales contract was assigned to First Community.

¶10    Gill, president of First Community, testified in rebuttal that there are only two accounts at First Community related to the Smiths' loan: a savings account containing $5, which the Smiths were required to have to be members of First Community, and the loan account, which contains the payments made from the Smiths' account at a different financial institution.

¶11    The circuit court found that the witnesses' testimony was "overall" credible.  It found that the Smiths were party to and aware of the retail installment sales contract, which laid out the cost of the Traverse, the financing arrangement, and the monthly payment.  The court further found that, as the Smiths were also aware, Frank Boucher assigned its interest in the contract to First Community, and the Traverse itself was "the collateral for the contract," "meaning that if the contract isn't fulfilled by the buyers, then the seller, which became First Community Credit Union holding the contract, would have the right to obtain that collateral to secure their interest."  The court granted judgment in favor of First Community, ordering replevin along with costs.  The court also found that Nathaniel was in default based on his failure to appear at the trial and granted judgment against him on that basis.

¶12    The following day, Smith filed a motion to reconsider and a motion to stay enforcement of the replevin judgement.

¶13    In May 2025, the circuit court held a hearing on the motion to reconsider.  Smith argued that the error at issue was "the acceptance of the document from Frank Boucher as the finance contract … [because] [t]here's nowhere listed on that contract of any indication of First Community's relationship to [her]."  The court found "that there is absolutely no error of fact or law here" and denied the motion for reconsideration.  The court also stated that

default judgment had been granted against Nathaniel because he did not appear at trial, and that that judgment still stands.

¶14    The circuit court entered an order for judgment and judgment for replevin of the Traverse and granted First Community all court costs and fees associated with the case. Smith appeals.

## DISCUSSION

¶15    Pursuant to WIS. STAT. § 425.205, "a creditor seeking to obtain possession of collateral" as a result of a customer's default on a consumer credit transaction "shall commence an action for replevin of the collateral." A replevin action under § 425.205 may be commenced at any time after the customer's default. § 425.205(6). The action shall be conducted pursuant to small claims procedures, except that the creditor seeking replevin must conform its summons and complaint to the requirements of § 425.205(2) and (3). § 425.205(1).

¶16    This court reviews a circuit court's decisions after a bench trial under a well-established standard. Our review is highly deferential to the circuit court's findings of fact. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530. This court will not disturb the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12; *see also Figliuzzi v. Carcajou Shooting Club*, 184 Wis. 2d 572, 589 n.7, 516 N.W.2d 410 (1994) (whether a factual finding is clearly erroneous is identical to whether the finding is contrary to the great weight and clear preponderance of the evidence). Furthermore, "[i]t is not within our province to reject an inference drawn by a fact finder when the inference drawn is

reasonable." ***Global Steel Prods. Corp. v. Ecklund Carriers, Inc.***, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. "We will search the record for evidence to support the findings that the [circuit] court made, not for findings that the [circuit] court could have made but did not." ***Id.*** "The [circuit] court is the arbiter of the credibility of witnesses, and its findings will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." ***Id.***

¶17    I now address in turn Smith's arguments as she frames them.

### A. First Community failed to produce the complete agreement

¶18    Smith argues that First Community cannot enforce the security agreement because First Community failed to produce the "complete agreement" as required by WIS. STAT. § 409.203 and ***Gielow v. Napiorkowski***, 2003 WI App 249, ¶19, 268 Wis. 2d 673, 673 N.W.2d 351.

¶19    WISCONSIN STAT. § 409.203(2) provides that "a security interest is enforceable against the debtor … with respect to collateral only if:" (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral; and, pertinent here, (3) the debtor authenticated a security agreement describing the collateral. § 409.203(2)(a)-(c). For the purposes of WIS. STAT. ch. 409, "authenticated" means "signed," and "security agreement" means "an agreement that creates or provides for a security interest." WIS. STAT. § 409.102(1)(bm)1., (1)(s). I understand Smith to argue that First Community did not present a security agreement, signed by her, describing the collateral, because it did not produce something that she calls the "finance contract."

7

¶20      The circuit court determined that the retail installment sales contract introduced as an exhibit at trial is authentic and accurately evidences the transaction between the Smiths and Frank Boucher.  Smith does not dispute the authenticity of that contract.  The court found that the contract is signed by the Smiths and states that the Smiths give Frank Boucher a security interest in the Traverse to secure payment of what they owe on the contract.  It also found that the contract states that Frank Boucher "assigns its interests in this contract to" First Community, and found that the collateral so assigned is the Traverse.  The contract on its face identifies the vehicle serving as collateral, the Traverse, by its Vehicle Identification Number (VIN).  I conclude that the record supports all of these findings.  Accordingly, First Community presented a security agreement authenticated by Smith describing the collateral, that is, the Traverse, and Smith's argument that First Community cannot enforce the security agreement based on noncompliance with WIS. STAT. § 409.203 fails.

¶21      Smith asserts that the retail installment sales contract's reference to "other contracts we finance for you" means that First Community was required to produce some "other contract."  Smith cites *Gielow*, 268 Wis. 2d 673, ¶19, for the proposition that "[w]here a contract incorporates other documents by reference, those documents must be produced," or the contract is rendered "incomplete and unenforceable."  This proposition is not supported by *Gielow*, which addressed the

propriety of a grant of summary judgment based on a release of claims.[3] *See id.*, ¶¶13-19. Smith further asserts that WIS. STAT. § 409.608 "limits a secured party's ability to enforce and collect to the rights established under an authenticated security agreement," and that "[w]ithout production of the complete agreement, [First Community] could not establish enforceable rights in the alleged collateral." Section 409.608 does not address a secured party's ability to enforce or collect on a security interest. Accordingly, I reject these assertions as unsupported by legal authority. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, … and we will not abandon our neutrality to develop arguments."). Moreover, Smith provides no citations to the record supporting her assertion that First Community did not produce the "complete agreement," or showing that there are "other contracts" financed by First Community in addition to the contract that First Community seeks to enforce in this case.

¶22 Citing *Milwaukee Mack Sales, Inc. v. First Wisconsin National Bank*, 93 Wis. 2d 589, 604, 287 N.W.2d 708 (1980), Smith asserts that our supreme court has "long required creditors to establish their rights in collateral before enforcement is possible." The proposition for which Smith cites

---

[3] Smith's briefs include false legal citations, of which her citation to *Gielow* is one example. Specifically, and as noted throughout this opinion, some citations misrepresent the content of the cited cases and statutes, and some citations are to legal authorities that exist but are wholly unrelated to the proposition for which they are cited. The inclusion of false legal citations in Smith's briefing violates WIS. STAT. RULE 809.19(1)(e) and (4)(b). This court cautions Smith not to repeat this violation in any future filings in this or any court. I offer an additional note of caution—if the root of the problem is that Smith used generative AI for legal research and trusted it to provide accurate results, she should be aware that there are many reported instances in which generative AI has hallucinated nonexistent cases and misreported the holdings of existing cases.

*Milwaukee Mack Sales* does not appear at the cited page, which is not part of that opinion. Moreover, Smith does not develop an argument that First Community has not established its rights in the Traverse as collateral, beyond the assertions that I have rejected above. I accordingly reject this additional assertion as undeveloped. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

### B. First Community violated WIS. STAT. § 425.109 by failing to produce the writings evidencing the transaction

¶23 Smith argues that First Community violated WIS. STAT. § 425.109 by failing to produce the writings evidencing the transaction, and that, as a result, "the judgment rests on speculation rather than competent evidence and therefore requires reversal under … § 425.109(1)."

¶24 The statute governing actions by creditors to recover collateral, WIS. STAT. § 425.205, provides that "[t]he complaint in such action shall conform with the requirements of [WIS. STAT. §] 425.109." § 425.205(3). Section 425.109 sets forth eight items that a merchant must include in its complaint "to enforce any cause of action arising from a consumer credit transaction." § 425.109(1). Smith asserts that First Community failed to include the item set forth in § 425.109(1)(h): "an accurate copy of the writings, if any, evidencing the transaction."[4] Smith asserts that the retail installment sales contract is "insufficient to satisfy this burden." The contract identifies the buyers (the Smiths) and seller (Frank Boucher); specifically identifies the Traverse by its VIN; contains truth-in-lending disclosures including the annual percentage rate, finance charge, amount financed,

---

[4] Smith also refers to requirements that she asserts are found in WIS. STAT. § 425.109(1)(a), (b), and (e), but none of those subsections contain the requirements that she identifies, nor are those requirements found elsewhere in the statute.

total sale price, and amount and number of monthly payments; contains a clause giving the seller a security interest in the Traverse; is signed by the Smiths and a representative of Frank Boucher; and states that Frank Boucher assigns its interest in the contract to First Community. Smith does not explain what additional information is required to be included in the "writings … evidencing the transaction," and she cites no legal authority in support of her conclusory assertion that this contract does not satisfy § 425.109(1)(h). Accordingly, I reject her assertion that First Community did not comply with § 425.109(1). *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (this court "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record").

¶25   Smith also asserts that the credit applications signed by the Smiths do not contain financing terms, and that those applications are insufficient to comply with WIS. STAT. § 425.109(1). As explained above, the retail installment sales contract contains those terms, so it is irrelevant that the credit applications do not.

### C.  First Community's evidence lacked probative value under WIS. STAT. § 799.209(2)

¶26   Smith argues that First Community's evidence "lacked probative value," and that, as a result, the judgment is "based on speculation and hearsay" in violation of WIS. STAT. § 799.209(2) "because the statute requires competent evidence with reasonable probative value, which [First Community] failed to provide."

¶27     WISCONSIN STAT. § 799.209(2) provides that in all small claims proceedings,

> [t]he proceedings shall not be governed by the common law or statutory rules of evidence except those relating to privileges under [WIS. STAT.] ch. 905 or to admissibility under [WIS. STAT. §] 901.05. The [circuit] court or circuit court commissioner shall admit all other evidence having reasonable probative value, but may exclude irrelevant or repetitious evidence or arguments. An essential finding of fact may not be based solely on a declarant's oral hearsay statement unless it would be admissible under the rules of evidence.

¶28     Smith asserts that First Community "relied … on speculative testimony from its agents" who "lack[ed] … personal knowledge," regarding what Smith purports is "the missing finance contract." Smith points to two excerpts of the testimony of First Community's witnesses, that "the loan was through the dealership" and that they had "never been provided with any documentation," to argue that the witnesses "admitted lack of personal knowledge." As to the first excerpt, that the contract assigning the collateral to First Community, which the Smiths signed, originated with the dealership does not mean that the First Community officers who testified lacked personal knowledge of the contract at issue. The second excerpt is taken out of context and refers to Smith's failure to provide First Community with documentation of the "loan account" from which she asserts First Community was supposed to be withdrawing her loan payments. To the extent that either quote shows that the testifying officers had no personal knowledge of another contract of which Smith herself provided no evidence, Smith fails to explain why that matters in this case to enforce the contract at issue.

¶29     Moreover, Smith fails to point to any of the circuit court's findings about the contract at issue that are based on these testimony excerpts. Smith also fails to explain how the evidence that the court did rely on—specifically, the retail

installment sales contract, which Smith does not dispute is authentic, and her own testimony about that contract—is not competent evidence that is probative of First Community's right to enforce the security agreement. Accordingly, I conclude that Smith fails to show that the court relied on inadmissible evidence or evidence that lacked probative value in violation of WIS. STAT. § 799.209(2).

### D. First Community violated federal law

¶30 Smith makes the conclusory assertion that First Community failed to comply with 12 C.F.R. §§ 1002.2 and 1002.9, which she asserts provide that "creditors may not take action unless an application is complete and must provide the applicant with the required adverse action disclosures." Smith does not identify with citation to the record or legal authority what portion of her application was incomplete, nor does she identify what adverse action was taken that required disclosures to be provided. I reject Smith's conclusory and undeveloped assertion on this issue. *See McMorris*, 306 Wis. 2d 79, ¶30. For the sake of completeness, I also note that "adverse action," as defined by 12 C.F.R. § 1002.2(c)(2), does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account."

¶31 Smith also asserts that First Community "violated the Fair Credit Reporting Act, which strictly limits access to consumer reports to circumstances involving [a] permissible purpose, 15 U.S.C. § 1681b." 15 U.S.C. § 1681b governs the permissible purposes under which a consumer reporting agency may issue consumer reports. Smith cites no relevant legal authority, and points to nothing in the record, to support her implicit assertion that First Community is a "consumer reporting agency." I reject this undeveloped argument on that basis.

*See McMorris*, 306 Wis. 2d 79, ¶30. Moreover, I note that the credit applications signed by the Smiths, which Smith testified are authentic, explicitly allow "the dealer, and … the financial institution(s) selected to receive [the Smiths'] application[s]" to "obtain a consumer credit report periodically … in connection with the proposed transaction."

### E. The circuit court entered default judgment against Nathaniel without competent evidence

¶32 Smith argues that the circuit court erred in entering default judgment against Nathaniel without competent evidence, in violation of WIS. STAT. § 799.209(2). This argument fails for at least the following reasons.

¶33 First, Smith lacks authority to make this argument challenging the judgment against Nathaniel. Because she is not an attorney licensed to practice in Wisconsin, she may not represent any party but herself. *See Jadair Inc. v. U.S. Fire Ins. Co.*, 209 Wis. 2d 187, 202-03, 562 N.W.2d 401 (1997) (a person may not appear on behalf of another person or entity in any action or proceeding before a court of this state, with one limited exception not applicable here).

¶34 Second, because Nathaniel has not appealed the judgment against him, this court lacks jurisdiction to review that judgment. *See* WIS. STAT. § 809.10(1)(e) (a party must file a timely notice of appeal to give this court jurisdiction over the appeal); *Jadair Inc.*, 209 Wis. 2d at 211 (when the notice of appeal is signed and filed by a nonlawyer on behalf of another person or entity, this court lacks jurisdiction).

¶35 Third, default judgments in small claims proceedings cannot be appealed. WIS. STAT. § 799.29(1)(a) ("There shall be no appeal from default

14

judgments, but the [circuit] court may, by order, reopen default judgments upon notice and motion or petition duly made and good cause shown.").

## F. The circuit court improperly shifted the burden of proof

¶36 Smith asserts that the circuit court erred by excusing First Community's evidentiary deficiencies and improperly shifting the burden of proof onto her, in violation of WIS. STAT. § 799.209(1). Section 799.209(1) provides: "The [circuit] court or circuit court commissioner shall conduct the proceeding informally, allowing each party to present arguments and proofs and to examine witnesses to the extent reasonably required for full and true disclosure of the facts." Smith asserts that the court "failed this duty by relieving [First Community] of its evidentiary burden" and instead "repeatedly demand[ing] that … Smith prove where funds came from and how the transaction was financed." This assertion is unsupported by the record. My review of the trial transcript, as cited by Smith in support of her assertion, shows that the court allowed both parties to present arguments and examined the witnesses "to the extent reasonably required for full and true disclosure of the facts." *See* § 799.209(1). The court did not shift the burden of proof onto Smith by "demand[ing]" that she explain where funds came from, but instead examined her to ensure that it understood her arguments. Moreover, I have explained above why I conclude that First Community presented sufficient evidence, in the form of the retail installment sales contract, to meet its burden to establish its entitlement to replevin.

¶37 Smith asserts in one sentence that "[t]his error violated both due process and the statutory framework governing consumer credit actions." I reject this undeveloped assertion as unsupported by citation to relevant legal authority. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

### G. The circuit court prejudged Smith's credibility

¶38　Smith asserts that the circuit court erred by "substitut[ing] personal impressions for legal analysis." I understand her to be arguing that the court was objectively biased. "Whether a circuit court's partiality can be questioned is a matter of law that we review independently." *State v. Goodson*, 2009 WI App 107, ¶7, 320 Wis. 2d 166, 771 N.W.2d 385. There is a rebuttable presumption that the court has acted fairly, impartially, and without bias. *Id.*, ¶8. A defendant can rebut the presumption by showing either subjective or objective bias by a preponderance of the evidence. *Miller v. Carroll*, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542. While subjective bias "is not at issue" if the court believes itself to be fair and impartial, objective bias—actual bias or a serious risk of actual bias or prejudgment—depends on the perception of an objective and reasonable observer. *Id.*, ¶¶21-22. Objective bias exists when "a reasonable person could question the court's impartiality based on the court's statements." *Goodson*, 320 Wis. 2d 166, ¶9. "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Miller*, 392 Wis. 2d 49, ¶24 (quoted source omitted).

¶39　In support of this assertion, Smith cites the circuit court's statements at trial that it did not want to go down a "dubious line of fraud" with respect to one of Smith's arguments about the UCC, and that it appeared Smith was "grasping at straws to evade making payment for a vehicle that [she] bought." She also cites the court's statements at the hearing on her motion for reconsideration that it was not sure whether she was "trying to concoct an argument … to get out of having to pay for a car," and that she should "pay for [the car]." Smith fails to show that the court's statements regarding its evaluation of her arguments and the evidence constitute "personal impressions" or "preconceived views." The trial transcript

16

shows that the court made these statements as an alternative way to view Smith's arguments, but that the court was choosing to "give [her] the benefit of the doubt … that there's just a misunderstanding on [her] part as to what [the contract and other documents in the exhibits are] and what [they] mean[]." The transcript shows that the court carefully and respectfully questioned Smith and allowed her to present her arguments, and then presented its assessment of those arguments based on the evidence before it. In other words, all of the court's comments were made after hearing the evidence and Smith's arguments, and represent the court's assessments of the arguments, not personal impressions or preconceived views of Smith.

¶40 Smith asserts that her case is distinguishable from *State v. Rochelt*, 165 Wis. 2d 373, 477 N.W.2d 659 (Ct. App. 1991), in which this court concluded that the defendant received a fair trial, because "here the record demonstrates repeated reliance on personal impressions in place of statutory analysis. This prejudgment denied the Smiths a fair trial." But Smith fails to show that the circuit court here conducted the trial and made its ruling based on personal impressions or prejudgment, and the record establishes to the contrary.

¶41 Smith also asserts that the circuit court "failed its statutory duty under [WIS. STAT.] § 805.17(2)" by prejudging her credibility and relying on non-probative testimony, but she does not explain how the court violated this statute, which states, in part, "the court shall find the ultimate facts and state separately its conclusions of law thereon." Moreover, as stated above, the court found her testimony credible and did not rely on non-probative testimony.

### H. Additional assertions

¶42    Smith generally asserts that First Community "routinely … engages in pledging member receivables as part of its ordinary business practices," and that this is relevant because "[w]hether the Smiths' receivable was retained by [First Community] or pledged to another party affects whether [First Community] had standing to enforce."  But, Smith does not argue that First Community pledged the Smiths' "receivable" to another party.  Smith also does not cite legal authority in support of her assertion that First Community may have lacked standing.  I reject whatever argument Smith means to make in support of this assertion as undeveloped.  *See **Industrial Risk Insurers***, 318 Wis. 2d 148, ¶25.

¶43    Smith asserts that the circuit court's actions in entering default judgment against Nathaniel, prejudging her credibility, and shifting the burden of proof onto her, "deprived both Mr. and Mrs. Smith of their constitutional right to due process."  However, as I explain above, the default judgment against Nathaniel is not before this court, and the court neither prejudged Smith's credibility nor shifted the burden of proof onto her.  Regardless, Smith does not develop this conclusory assertion with citation to legal authority, and I reject it on that basis.  *See **McMorris***, 306 Wis. 2d 79, ¶30.

¶44    Smith asserts that the errors she identifies above "were not harmless," based on information outside of the record.  Because I conclude that the circuit court did not err in any of the respects asserted by Smith, I consider this assertion no further.

¶45    In this section of her brief, Smith also asserts in a single sentence that "the judgment rests on evidence obtained unlawfully."  Smith does not

develop this assertion into a supported argument, and I accordingly consider it no further.

¶46    In her reply brief, Smith asserts that "First Community … never proved it was a party to, or assignee of, the consumer credit contract." I could reject this assertion because it is raised for the first time in the reply brief. *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief."). However, I also conclude that Smith fails to show that the circuit court's finding—that the retail installment sales contract, which contains the security agreement, was assigned to First Community—is clearly erroneous. That agreement states that Frank Boucher assigned its interest in the contract to First Community, and Smith does not support her conclusory assertion that this is insufficient to prove the assignment with citation to relevant legal authority.

## I. Frivolous appeal

¶47    First Community has filed a motion for costs, fees, and attorney fees based on a claim that Smith's appeal is frivolous under WIS. STAT. RULE 809.25(3).[5] "Whether an appeal is frivolous is a question of law." *Kraemer v. Traun*, 2025 WI App 8, ¶55, 415 Wis. 2d 125, 17 N.W.3d 49 (2024). "Sanctions for a frivolous appeal will be imposed if the court concludes that the party 'knew, or should have known, that the appeal ... [had no] reasonable basis in

---

[5] First Community's brief refers to the parties by their status on appeal, and not by their names, contrary to WIS. STAT. RULE 809.19(1)(i). Use of these designations can easily create confusion that is an unnecessary burden for this high-volume court.

law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.'" ***Id.*** (quoted source omitted); RULE 809.25(3)(c). This court "'resolve[s] all doubt in favor of finding the claim nonfrivolous.'" ***Dietscher v. Pension Bd. of Emps.' Ret. Sys. of Milwaukee***, 2019 WI App 37, ¶56, 388 Wis. 2d 225, 932 N.W.2d 446 (quoted source omitted).

¶48 This court awards attorney fees under WIS. STAT. RULE 809.25 only when the entire appeal is frivolous. ***Thompson v. Ouellette***, 2023 WI App 7, ¶30, 406 Wis. 2d 99, 986 N.W.2d 338. While many if not most of Smith's arguments are not supported by the record or by citations to relevant authority, I cannot conclude that the entire appeal is frivolous. Accordingly, I deny First Community's motion.

## CONCLUSION

¶49 For the reasons set forth above, I affirm the judgment of the circuit court and deny First Community's motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.